May it please the court, this is a very simple situation and basically my client has had PTSD because of her 30 concussions, she has a series of impairments which I could go on but the basic issue is that she never received, the ALJ did not even review the full record of her brain injury center and then they dismissed the case at step 2 which is a diminished finding and which comes under this court and the social security regulations have said only frivolous cases are dismissed at step 2. So they're really, Gloundon v. Chikazi covers this, I'm going to reserve if you don't, any questions for everything for rebuttal because I really don't see any conflict here, the regulations cover this. One of your arguments as I understand it is that the ALJ erred in failing to consider the combined effects of the different impairments but the ALJ said a number of times that he had considered them singly and in combination so what more do you think that he had to say? So he should have gone on, he dismissed the case, he should have gone on and gone to step 3 and determined whether there was a functional disability because you can have disabilities but yet it be able to work. So you go through that review and then you see if the medical vocational profiles cover it and then the commissioner has the burden of showing there's a competitive number of jobs that could be worked with these impairments. So if you cut it off saying, oh frivolous, then you don't get the review of that. And so although we would like to think that maybe he addressed the combination, it doesn't matter because if you don't have an RFC, if you don't have a residual functional capacity and you don't do the whole analysis, you don't, the ALJ doesn't or... There's no basis for explaining why it's, in combination she's not disabled if you don't go on to step 3, is that? Well, right, because there's a mental issue and in 1985 the Disability Acts made sure that the commissioner didn't just walk over people with mental instability because that kind of functional is one kind and physical is another. And so there's a whole set of protections in the different statutes for different kinds of problems. For instance, mentally my client doesn't have, she's got memory gap because she's got a slow brain functioning because of all those concussions. And that would make a difference in whether she could work. So the residual functional capacity might be, if the ALJ had gone on, would say she could work jobs that required very little memory. And then the commissioner would have to come back and say, well, there are these jobs, there's all these jobs, or there aren't jobs. So that's the... What was her prior work? She had a prior work. I think she was a waitress. It says she was a merchandiser or something like that. I don't know what that is. Right. Well, merchandise, I think that categories anybody who works in retail or... And we didn't even get that far as to what the vocational expert would say she did work at. The problem was that she was in an abusive relationship. She had so many concussions, and then she got in an accident on top of it, so she hasn't worked for a long time. Okay. And it wouldn't only last five years count towards the past relevant work. Okay. So there really isn't... There isn't any. No past relevant work. And for her, she's very struggling. If you read the hearing, she's struggling to even understand what's being asked of her. So this appears to be... It's just a mistake. And I'd be glad to answer any... Glandon covers this, makes a beautiful discussion of exactly all the different regulations. Social Security's 8528 says that the combination of non-severe impairments is more than a diminish. So that means that pretty much the only kind of case that you would just not even cover would be something where someone maybe... They just thought they'd apply for Social Security, and they came in, and that's what happened. So that's my understanding. Can you address the... So the ALJ rejected Ms. Combest's subjective symptom testimony as inconsistent with the objective medical evidence, and you mentioned that in your brief, but it wasn't clear to me that there was really a developed argument that that aspect of the ALJ's decision was erroneous. So what's your view on that issue? Well, the issue... It's always difficult because she's got brain trauma, but what she's saying is that, I had brain trauma, I go to Dr. Cardenas, and what she's saying is in the record. But those records weren't even reviewed. So as far as her subjective statements, she's saying, I've been treated, I have these problems, and that's valid. And so for the ALJ to dismiss it and just say, well, she's not credible, he has to show, or she has to show, well, look, she said she has brain trauma here, but really this doctor said she's been climbing mountains. But that didn't happen here. This isn't a very complex case because she has such problems. And is it your view that you have preserved a challenge to that aspect of the ALJ's decision? Well, okay, so the ALJ didn't do any analysis. He only did to SEP2. So we're just left with somebody who, you know, like a brief writer, who put that in, but his decision doesn't analyze any of that. Right, I guess my point is that that's a critique of the ALJ's decision, but is that a critique that you have preserved for our and presented to us? Yes, subjective statements. But I really do feel that so far the fact that it stopped at SEP2 is very important here. Do you want to preserve the rest of your time? Yes, thank you. Ms. Bond, welcome back. Thank you. Good morning. My name is Shay Bond on behalf of the Acting Commissioner of Social Security. We have a very different interpretation of this record from claimant, especially since Council today is leapfrogging past SEP2 and talking about SEP3 and RFC. We don't get there on this record. And there was ample evidence in this record and cited in the ALJ's decision explaining why the claimant did not meet the de minimis standard. We have seven medical sources treating, examining, and reviewing doctors who described her conditions as mild. They actively assessed no mental or physical limitations, or they found specifically that she did not have any severe physical or mental impairments at SEP2. And the ALJ's decision is quite thorough. The ALJ goes through all of her impairments, and I would like to stress that I think contrary to my colleague's representation, just the sheer number of diagnosed impairments doesn't get you past the threshold. It might show that you have medically determinable impairments, but those impairments, either individually or collectively in combination, must show that you have a condition that significantly limits your ability to do basic work activities, and we just don't have that on this record. And getting back to the thoroughness of the ALJ's decision, I disagree with my colleague that it's just unexplained. You have, again, some very detailed analysis of what the evidence showed. You have pinpoint sites to different exhibits in the record. You have an analysis my colleague brought up about the brain injury, and the ALJ discusses that and says, you know, there was the allegation, but we have, you know, the consultative doctor who assessed with her for the mental status examination and said that she had no cognitive impairment. Dr. Cardenos at the Barrow Clinic, which is for concussions, evaluated the evidence, which included the EEG testing, the MRI testing, and his clinical evaluation of the claimant, and said it was only a mild condition. The fibromyalgia, Dr. Koonsman, who elicited the tender points, said that there was really no impact on her daily activities, and that was coming from claimant herself who said that, and then said that she had no limitations. Sotomayor, she had fibromyalgia, and she had mild brain difficulties. So it's not as if there was nothing wrong with her. I don't see how that meets — how does that meet — do you disagree that at step two, it has to be virtually frivolous? Well, it's — that is the standard that this Court has said, and it's our — it's our position that in relation to the threshold requirements of step two, it would meet the frivolous standard. And it's — again, it's not just the number of impairments that the claimant has, it's the impact they have on her ability to do the basic work activities. And yes, it's a mild cognitive impairment, and yes, she does have fibromyalgia, but the doctors who examined her or treated her either said she had no limitation or it was very mild. So we have seven medical professionals, again, who treated, examined, and reviewed this record and said that she did not have significant impairments. That would — and that would — that would pass the step two threshold. So the discussion today about what could have happened at step three or at the RFC level, that's premature because we just don't get past that threshold level. And I would also point out that it is our position that the claimant did not adequately preserve or challenge the ALJ's evaluation of her subjective statements. That was not preserved. And the ALJ's decision, again, I disagree with my colleague. It's very detailed. It identifies the evidence in support of the conclusions here. And, you know, it's — these step two cases are more rare, obviously. I agree. But to me, this is an example of a case — my colleague cites Glandon, but Glandon specifically states that a claim is properly denied at step two if there is unambiguous record showing only minimal limitations. And we have that record here.  What's the strongest case where we've upheld a step two denial? Well, Ukolov has — has upheld us. In that case, it's different because there really wasn't much objective evidence supporting the claimant's claim. We have Glandon where, you know, the claimant there had, I think, four surgeries, like two spinal surgeries, had, like, surgery on his wrist. He had, like, necrosis, and he had a broken bone and had to have, like, a screw inserted. And then I think there were additional problems that he had. And then the ALJ, because he had been in prison, and then when he came out, he didn't have access to medical care, this court held that the ALJ had misinterpreted the record against him to say, well, you didn't seek medical care because your impairments weren't that severe. It really was he just didn't have access to care. So that's, like, on one end is Glandon and on the other end is Ukolov. I would say this falls in between. But this would be an example of a record where we still have, yes, there's evidence of impairment, and the ALJ absolutely found that. We have medical determinable impairments, but they just don't cross that step two threshold. Can I ask you to go back a moment to the subjective symptom testimony? So there is a section in her opening brief entitled, The ALJ did not provide clear and convincing reasons to not find Ms. Combest credible. And then in that section she says, Combest's subjective complaints are consistent with the objective medical evidence. So why is that not enough to preserve the argument? Because it's not getting into the de- actually challenging the details of the ALJ's decision. I mean, to me that's more of an alternative opinion about what the record showed and just her view of what the ALJ should have reached a different conclusion, but it's not attacking any of the specific rationale. And so you have the ALJ, again, going through, again, very detailed paragraphs, not only addressing each impairment, but how they interact with one another, which goes to the combination of impairments at step two. And so the ALJ was pointing out, for example, the claimant had initially said that she- I think it was telling Dr. Webster that she had no brain injury, like she had no cognitive issues. And then later on she's telling Dr. Cardenas, I was- had 30 traumatic brain injuries, and I was hit in the head and I lost like three liters of blood. I mean, it was just this very extreme, different statements that she had presented to different providers, and that's something that the ALJ identified. So counsel's not- my colleague is not grappling with those inconsistencies and actually explaining why wasn't the ALJ entitled to identify as an inconsistency when she really is saying that I feel that a lot of these problems were related to, you know, the fact that she had the brain injury. So- and then her activities were inconsistent. We have just what the objective evidence showed in terms of, say, what she's alleging about mental dysfunction. You know, again, the mental- many mental status examinations show that she didn't have any kind of cognitive problems. The ALJ points all of this out as running contrary to the allegations that she made. And so counsel hasn't grappled with that sufficiently in the- Isn't your- not to interrupt, but I guess I am. But the question is, did she preserve it? Your argument is the arguments that she made were insufficient, but she did raise it in the brief. I mean, it's raised briefly, but I think this Court's precedent says that even a- like a really deficiently raised argument can be deemed waived because it's just- it's raised, but it's not sufficiently explained. So that is- this Court's precedent does attach a waiver element to that. So I think the Court could find it's waived. So would you address the combination issue? I mean, we have- the ALJ didn't discuss combination in a separate section. He said- or the ALJ said, I've considered all of these individually and in combination. Why is that enough? Well, it wasn't just one blanket statement. The ALJ talks about that throughout the record- sorry, throughout the decision. Says that several times. He says that throughout the decision. But again, if you look to certain pages of the ALJ's decision, it does talk about how these impairments do interact with one another. Let's see. You know, talking about, say, the major depressive disorder and post-traumatic stress disorder considered singly and in combination do not cause more than a minimal effect, and then goes forth to explain. You know, talking about- I'm sorry, and that's on page 110 of the record, certified administrative record. I think the ALJ talks about also the fibromyalgia in terms of other impairments as well because she was alleging other issues with her dexterity and being able to walk or stand. And the ALJ talks about- this is on 107 of the record- talking about how she had the cellulitis, the sepsis, and acute kidney injury that didn't meet the 12-month duration requirement in combination with the headaches and the migraines that she argued, and that's on 107. So I think this ALJ's decision shows not only was the statement made that the ALJ was considering this in combination, but the ALJ actively considered the evidence and the impairments in combination in finding that she did not meet the threshold requirement at step two. Thank you very much. We ask that you affirm. Rebuttal. Your Honors, I think the Commissioner is confused as to the sequential steps. She's basically conceded that there are a combination of impairments, and the issue here would be a case that had no impairments should be waived. A medically determinable impairment or a non-severe impairment just means that it didn't meet the adult listing. So, I mean, there's two- it's a very, as you realize, it's a very complicated structure that's supposed to pick up any kind of little problem. And this would be a good example because the real issue here is if you're going to deal without even the inability to stand, as the Commissioner has conceded, and problems with your hands being able to carry things, if you're just going to be dealing with your brain injury, that's going to be something you need to discuss because how could that person get to work and persist? One of the other issues here is that Dr. Cargenius was- his records were not reviewed by the ALJ. So that's a brain injury, and to have some consultant examiner not review it and make an analysis that her memory's fine, she's got an EEG that says her brain is slowed. It's objective. So as far as subjective statements, we've put this in the record and also put her hearing in the record too. She's trying very hard to explain what her situation is, and we can't count it against her that she's got brain trauma. Her issue is that she's having trouble, and Social Security is not a completely lucrative thing. It's to take the people who can't work and give them some assistance so that they can go on. And I feel like the commissioner's suggesting that, as in before 1985, that the ALJ could just toss it out. This looks good, this looks bad. The whole structure is to make sure that we cover everything consistently. And this is a kind of blatant case, and I'm open for any questions on any issue, but I feel it's pretty blatant. And you're supposed to review the doctor's brain injury and the EEG. He did not, and it's not diminished. Thank you, counsel. We thank both counsel for their arguments, and the case is submitted.
judges: SCHROEDER, THOMAS, MILLER